BANK OF OKLAHOMA, CITY PLAZA, Appellee,

v.

Scott MARTIN, Trustee in Bankruptcy for Mid-Region Petroleum, Inc., and Western National Bank of Tulsa, Appellants.

No. 65155.

Court of Appeals of Oklahoma, Division No. 2.

June 2, 1987.

Rehearing Denied Aug. 10, 1987.

Certiorari Denied Oct. 13, 1987.

Kenneth M. Smith, Robinson, Boese, Orbison & Lewis, Tulsa, for appellee.

Steven M. Harris, Doyle, Harris & Riseling, Tulsa, for appellant Western Nat.

MEANS, Presiding Judge.

Defendant Western National Bank appeals from the trial court's order which determined lien priority in an aircraft. The trial court found that Plaintiff, Bank of Oklahoma, had a first and prior lien against the proceeds of the sale of the aircraft. Having reviewed the record and applicable law, we affirm.

These proceedings arose from the bankruptcy of Mid–Region Petroleum, Inc. Both Bank of Oklahoma [BOK] and Western National Bank were creditors of Mid–Region. In 1980 and 1981, Western obtained security agreements and filed UCC–1 financing statements to secure several loan transactions which it had entered with Mid–Region. These agreements covered virtually all of Mid–Region's assets and typically listed extensive collateral, such as the inventory, equipment, and accounts receivable.

In November 1981, Western filed a UCC–1 financing statement in Oklahoma City which listed the following types or items of property:

ALL EQUIPMENT AND IMPROVE-MENTS Now Owned or Hereafter Acquired and the proceeds therefrom whether or not specifically described located at Mid–Region Terminal, ... ie., buildings, tank foundations, tanks, loading racks, pumps, piping, valves and fittings.

During this same time period, Mid–Region was also involved in loan transactions with BOK. As collateral for Mid–Region's debt, BOK was granted a security interest in a Falcon airplane purchased by Mid–Region in July 1981. BOK checked the Feder-

**220**

al Aviation Administration records in order to determine whether the airplane was free from other liens. Although BOK discovered a number of security interests and financing statements concerning Mid–Region and its property which were filed in Oklahoma, Rogers, and Tulsa Counties, there were no recorded filings with the FAA.

Subsequently, BOK took the Falcon airplane as collateral on March 16, 1982, and perfected its interest by filing with the FAA on June 4, 1982. On November 22, 1983, Western filed a security agreement with the FAA concerning the same airplane.

It is undisputed that both BOK and Western held a perfected security interest in the Falcon aircraft when Mid–Region declared bankruptcy on December 22, 1983. The plane was sold and the trustee in bankruptcy, Scott Martin, tendered more than $374,000, as the proceeds of the sale, to the district court for a determination of the priority of liens. Essentially, each bank argued that its security interest should have priority.

BOK argued that its interest had priority by virtue of 49 U.S.C. § 1403 (1982), because it was the first to file its security interest with the FAA. Western asserted that its security interest had priority by virtue of the fact that it had taken and perfected a UCC–1 in Mid–Region's current and after-acquired inventory, equipment, proceeds, accounts receivable, and contract rights prior to BOK's filing. Western alleged that BOK knew of its prior UCC–1 filing when BOK took the security interest in the aircraft. Although Western's interest in the specific aircraft was eventually perfected by filing with the FAA, this filing occurred after BOK's interest was perfected.

BOK moved for summary judgment, asserting that there were no controverted facts and that it was entitled to judgment as a matter of law. BOK argued that its filing with the FAA, pursuant to 49 U.S.C. § 1403(c) (1982), gave its lien superiority over any other perfected interest. Western argued that, regardless of its failure to first record with the FAA, it acquired certain interests in the airplane under Okla-

homa law which were superior to those of BOK. Both parties presented extensive authority in support of and in opposition to, the summary judgment motion.

After hearing argument and reviewing the authorities submitted, the court specifically found that there were no material facts in issue. The court granted judgment for BOK, finding that it "has a valid security interest in the sales proceeds of [the aircraft], which security interest is a first and prior lien against said sales proceeds." Western has appealed.

Resolution of this appeal is determined by the applicability of the Federal Aviation Act, *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983), and the Oklahoma statutes. Contrary to the reasoning applied by Western, this court finds the federal act and *Philko Aviation* controlling.

With the passage of the Federal Aviation Act in 1958, Congress directed the Secretary of Transportation to establish and maintain a system for recording "[a]ny conveyance which affects the title to, or any interest in, any civil aircraft of the United States." 49 U.S.C. § 1403(a)(1) (1982). In order to establish the importance of this filing system, subsection 1403(c), provides:

> No conveyance or instrument the recording of which is provided for by subsection [1403(a)] shall be valid in respect of such aircraft ... against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation.

Section 1403 requires recording with the FAA of *every* transfer of *any* interest in a civil aircraft in this country. *Philko Aviation,* 462 U.S. at 410, 103 S.Ct. at 2478. Because the clear intent of Congress was to require the recording of every conveyance, "Congress must have intended to pre-empt any state law under which a transfer without a recordable conveyance would be valid against innocent transferees or lienholders who have recorded." *Id.*

According to the Supreme Court:

> [T]he primary congressional purpose for the enactment of § [1403(c) ] ... was to create "a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft."

*Id.* at 411, 103 S.Ct. at 2479.

Western argues that although the federal statutes require recording with the FAA, this recordation does not assure priority. Indeed, the *Philko Aviation* Court agreed with this reasoning; however, the Court stated: "Although state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law." *Id.* at 413, 103 S.Ct. at 2480. The Court noted that although state law would govern validity of conveyances and priority, under the section 1403(c) requirement of recordation with the FAA for the purpose of determining whether there are any encumbrances on any aircraft, Congress intended that it would only be necessary to consult the central file. *Id.* at 413, note 7, 103 S.Ct. at 2480, note 7.

Western argues that its interest may receive priority through the saving provision of 12A O.S.1981 § 9–401(2), which provides:

> A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

■ While it is true that BOK had knowledge of Western's financing statements and security interests, nothing in any of these documents indicates an interest in the Falcon aircraft. Western relies on *Security National Bank and Trust Co. v. Dentsply Professional Plan*, 617 P.2d 1340 (Okla.1980), where the court discussed an improper filing when a secured party has knowledge of the filing. Western's situation might be analogous to *Dentsply* had Western improperly filed its interest in the aircraft in the wrong place or under the wrong name. In the instant case, however, Western never improperly filed its interest in the aircraft. Even after Western had knowledge of Mid–Region's purchase of the aircraft it waited months before it filed an interest with the FAA.

■ Furthermore, in citing the saving provision of article nine, Western overlooks the specific language of 12A O.S.1981 § 9–302(3)(a) (emphasis added), which states:

> The filing of a financing statement otherwise required by this article *is not necessary or effective* to perfect a security interest in property subject to:
>
> (a) a statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this article for filing of the security interest....

Subsection 9–302(4), states that "a security interest in property subject to the statute or treaty can be perfected *only by compliance therewith.*" Oklahoma's commercial code clearly states that an interest in property governed by a federal statute creating a national, federal recording system is perfected only by the federal filing and not by the state UCC filing. *See also South Shore Bank v. Tony Mat, Inc.*, 712 F.2d 896 (3d Cir.1983) (per curiam).

■ The language of the federal and Oklahoma statutes, as well as language from the Supreme Court, clearly states that a security interest in an aircraft is not perfected until filed with the FAA. In the instant case, Western's interest was not perfected until it filed with the FAA. In cases not governed by other rules, 12A O.S.1981 § 9–312(5)(a) provides that conflicting security interests in the same collateral shall be determined according to priority in time of perfection. Under this subsection, BOK's interest is undoubtedly superior.

The trial court's decision which granted summary judgment for BOK is supported by the law of this state, as well as the federal statutes. The decision is affirmed.

BACON and REIF, JJ., concur.